Stephen A. PRESTON, Plaintiff,

v.

John SEAY, et al., Defendants.

Civ. A. No. 81–807–K.

United States District Court, D. Massachusetts.

Nov. 23, 1981.

J. W. Carney, Jr., Mass. Defenders Comm., Boston, Mass., for plaintiff.

John Giuliani, Penal Institution Dept., Boston, Mass., for defendants.

KEETON, District Judge:

The issue presented by this petition for habeas corpus is easily stated, though not so easily answered. Did the Commonwealth of Massachusetts act within constitutionally permissible limits in declaring that petitioner lost his right to jury trial because he inexcusably failed to appear as directed after he had appealed from a conviction before a judge, sitting without a jury, in the Commonwealth's two-tier system?

### I.

Massachusetts' two-tier system was upheld against attack on other grounds in *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976). Explicitly reserving decision on a question closely analogous to that now presented, the opinion of the Court states:

> Since appellant Ludwig did appeal and then expressly waived a jury in the second tier, we need not address the question whether a failure to take an appeal would constitute a knowing and intelligent waiver of the right to trial by jury.

427 U.S. at 622 n. 1, 96 S.Ct. at 2784 n. 1.

In the present case it is undisputed that in the Boston Municipal Court Department petitioner was sentenced, then appealed, was defaulted, and after that default had been removed, was again defaulted for failure to appear on November 2, 1979.

Petitioner argues that the state has not shown that he made a knowing and intelligent waiver of jury trial. As viewed by the courts of the Commonwealth, however, the issue was not "waiver" in the sense of voluntary relinquishment of a known right, but "deemed waiver." The basis of rulings of the courts of the Commonwealth was that petitioner was held to be in "solid default" for failure to appear, in accordance with Mass.Gen.Laws ch. 278, § 24, which provides in pertinent part:

> If the appellant fails to enter and prosecute his appeal, he shall be defaulted on his recognizance and the jury-of-six session may impose sentence upon him for the crime of which he was convicted, as if he had been convicted in said court . . . .

See *Commonwealth v. O'Clair*, 374 Mass. 759, 374 N.E.2d 1212, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978); *Commonwealth v. Francis*, 374 Mass. 750, 759, 374 N.E.2d 1207, 1212 ("defendant is deemed to have waived his constitutional right to trial by jury"), *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978).

The evidence before the Boston Municipal Court Department, Jury Session, at a hearing on November 9, 1979, included testimony that petitioner was seen in the courtroom early on the morning of November 2, 1979, talked with Officer Stanton who advised him at about 9:15 or 9:20 that he was due in court at 10:00, that petitioner left the courtroom after being so advised, that the officer advised the judge of petitioner's leaving, that the case was called at approximately 10:00, that the petitioner was not present and was defaulted. Officer Stanton also testified that, when arrested on November 8, petitioner explained his absence when the case was called on November 2: "He said he wouldn't come to court."

On petitioner's behalf evidence was offered that petitioner's counsel arrived about 9:45 and conferred with an assistant district attorney and Officer Stanton about discovery and an agreed continuance of trial to a date in December. On cross-examination, however, the witness (counsel for petitioner) stated that he had not told petitioner not to be in court on November 2.

■ Petitioner seeks to excuse his absence when the case was called on November 2 on the ground that he and his counsel understood that the case was set for pretrial conference and not for trial on that date. It was plainly not error cognizable on

petition for writ of habeas corpus in this court, however, for the courts of the Commonwealth to hold that petitioner's absence, at a time when he had been ordered to be present and had been told by Officer Stanton and by his counsel that he should be present, was not excusable even if petitioner and his counsel had an understanding that the case was to be called at that time for a pretrial conference rather than immediate commencement of trial before a jury.

■ The Appeals Court, after full consideration of petitioner's contentions, held:

Ordinarily we would give considerable weight to a defendant's reliance on his counsel's representation. However, in the entire circumstances presented here we agree with the motion judge who found that the defendant's "default was a solid default with a complete disregard of the necessity of appearance for trial."

*Commonwealth v. Preston,* 10 Mass.App. 807 (1980) 2137, 2139, 413 N.E.2d 749, 751 (footnote omitted).

The findings of the trial court and the Appeals Court are supported by the record. They cannot be taken, however, as findings that in fact petitioner knowingly and intelligently waived his right to jury trial. At most, the trial court and Appeals Court found that petitioner knowingly failed to appear when he had been told to appear. No finding was made as to whether he knew that the jury trial, as distinguished from a pretrial conference, was to commence at the time designated. Indeed, it is doubtful that the evidence would have supported such a finding. Nor is the determination of the Appeals Court—that petitioner's departure before 9:45 a. m. and his failure to appear thereafter on the same day, as directed, was a "solid default with a complete disregard of the necessity of appearance for trial"—equivalent to a finding of knowing and intelligent waiver of the right of jury trial. Rather, this determination plainly was based on Massachusetts' doctrine that "solid default" of appearance constitutes a "deemed waiver" of the right to jury trial. This doctrine is explicitly reasoned on the ground that "waiver" may be held to have occurred even though it is not found that defendant had a state of mind, or by his actions manifested to others that he had a state of mind, of being willing to give up his right to jury trial. Massachusetts courts hold that the right of trial by jury

may be regulated as to the mode in which the right shall be exercised so long as such regulation does not impair the substance of the right.... [Statutes such as Mass.Gen.Laws ch. 278, § 24] merely impose reasonable limitations for the exercise of such right.

*H. K. Webster Co. v. Mann,* 269 Mass. 381, 385, 169 N.E. 151, 153 (1929) (quoted with approval in *Commonwealth v. Francis, supra,* 374 Mass. at 755, 374 N.E.2d at 1210). Pursuing this theme, the opinion of the Supreme Judicial Court in *Francis* observed:

Moreover, in *Ludwig v. Massachusetts,* 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), it was held that the Commonwealth's two-tier court system, whereby a defendant charged in a criminal complaint is first required to be tried in the District Court where no trial by jury is available, and is thereafter entitled to trial de novo by jury in the Superior Court, does not deprive an accused of his constitutional right to trial by jury. The Court in *Ludwig* having described early in its opinion the procedural structure of the Commonwealth's two-tier system, including the provisions of G.L. c. 278, § 24, *id.* at 620–622, [96 S.Ct. at 2783–84] stated: "The modes of exercising federal constitutional rights have traditionally been left, within limits, to state specification. In this case, Massachusetts absolutely guarantees trial by jury to persons accused of serious crimes, and the manner it has specified for exercising this right is fair and not unduly burdensome." *Id.* at 630, 96 S.Ct. at 2788. We think such "manner," approved by the *Ludwig* majority, implicitly includes the proscriptions of G.L. c. 278, § 24.

Thus, applying the reasoning of *Ludwig*, as well as of the many other cases cited above to the present cases, we hold that G.L. c. 278, § 24, provides "regulations which are reasonable and necessary as to the mode in which [a defendant] may . . . prosecute his appeal" for trial de novo by jury, *Commonwealth v. Whitney*, 108 Mass. 5, 6–7 (1871), and, to the efficient operation of the court system. If a defendant "neglects so to . . . prosecute his appeal, he *waives* his right of a trial by jury" (emphasis added). *Id.* at 7. See *Commonwealth v. Drohan*, 210 Mass. 445, 446–447, 97 N.E. 89 (1912). Here, by virtue of his failure to appear in the Superior Court when required to do so for the trial of the cases which he had appealed and which failure was due to his own neglect in not informing the clerk's office of his change of address, the defendant is *deemed to have waived* his constitutional right to trial by jury.

374 Mass. at 758, 374 N.E.2d at 1212 (emphasis added).

The emphasized phrase, "deemed to have waived," underscores the point that the Supreme Judicial Court explicitly relied on "deemed waiver" rather than a standard requiring fact findings of a state of mind, or manifestations to others of a state of mind, of willing surrender of the right to jury trial. This point is further underscored by other passages in the opinion in *Francis*, including the following:

"Again and again . . . this court has treated the right [to trial by jury] as a privilege sacredly regarded by the Commonwealth and preserved to the individual against assault by the State; but a privilege which he could waive, *and, in certain circumstances, would be treated as waiving* . . ." (emphasis added [by the Supreme Judicial Court in *Francis* ]). *Id.* [*De Golyer v. Commonwealth*, 314 Mass. 626 at 630, 51 N.E.2d [251] at 253, quoting from *Commonwealth v. Rowe*, 257 Mass. 172, 176, 153 N.E. 537 (1926).

374 Mass. at 756, 374 N.E.2d at 1211.

Whenever a court deems something to be so, it expresses a legal conclusion, not a fact finding. The critical factfinding is not the deemed proposition but the finding of the fact that the court treated as sufficient to justify the deemer. Thus, inherently, the court in deeming something to be so is holding that the court will apply to the case the same legal rule it would apply if that something had been found as a fact, and it will do so without a finding that the deemed thing did in fact occur.

Because of the potentially contrary-to-fact nature of a deemer, there is often risk that a court will be misunderstood when it speaks in the language of deemer rather than fact. One may urge with much force that courts should say what they mean, mean what they say, and eschew deemers. Persuasive as this view may be, however, plainly it is not a constitutional imperative. Moreover, the opinions of the Supreme Judicial Court on the issue at hand are admirably candid, forthright, and clear. They explicitly disclose that, under Massachusetts law, a defendant may lose the right to jury trial because of a deemed waiver incident to a "solid default" of appearance, whether or not the defendant understood his right to jury trial and meant to, or manifested that he meant to, give up that right.

Of course, a state may impose reasonable regulations on the exercise of even the most precious rights. Plainly, too, requiring a defendant to appear for trial, or for pretrial proceedings, when directed to do so is a reasonable regulation. It does not follow, however, that there is no constitutional limit on the type of sanction the state may impose for default of appearance. Lesser sanctions than loss of the right to jury trial are available. Bail may be increased, or the order for release on bail may be vacated, the defendant being held in custody pending trial. The sanction as well as the regulation must be reasonable.

The substantive question at stake is not altered by calling the sanction, on the one hand, a forfeiture or deprivation of the right to trial by jury or, on the other hand, a deemed waiver incident to enforcement of a regulation of the exercise of that right. A rose were as sweet and a loss as bitter by

any other name. The result with which we are concerned here is the same in substance, in whatever way it may be described. Phrased as neutrally as I am able to put it, the question is, as stated at the outset, whether the Commonwealth acted within constitutionally permissible limits in declaring that petitioner lost his right to jury trial because he inexcusably failed to appear as directed.

## II.

In *Ludwig*, decided in 1976, the Supreme Court reserved decision, as noted above, on

the question whether a failure to take an appeal would constitute a knowing and intelligent waiver of the right to trial by jury.

427 U.S. at 622 n. 1, 96 S.Ct. at 2784 n. 1. One might infer from this phrasing of the question that the Court would require a fact finding of knowing and intelligent waiver of the right and that a potentially contrary-to-fact deemed waiver would not be an acceptable substitute. If that inference were accepted as correct, evidence of all the circumstances of a failure to take an appeal, or of a failure to prosecute an appeal once taken, would be relevant circumstantial evidence bearing upon the question whether the defaulting defendant had knowingly and intelligently waived his right to jury trial, but deeming a waiver would be impermissible. A finding of knowledge that the consequence of loss of the right to jury trial would flow from the conduct would be an essential element of a finding that the failure to appear constituted a knowing and intelligent waiver.

This reading of the Court's statement on the question reserved in *Ludwig* is reinforced by an examination of the Court's pre-*Ludwig* opinions on knowing and intelligent waiver of constitutionally protected rights in state courts. *See, e.g., Boykin v.*

*Alabama*, 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–13, 23 L.Ed.2d 274 (1969) (waiver pursuant to guilty plea of privilege against compulsory self-incrimination, right of confrontation, and right to jury trial); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966) (waiver of right to confront and cross-examine witnesses); *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) (waiver of right to counsel). *See also McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) (waiver of rights pursuant to guilty plea in federal court); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (waiver of right to counsel in federal court). Were I guided solely by the statement of the issue in *Ludwig* and the previous decisions of the Court on other constitutional rights, I would conclude that Mass.Gen. Laws ch. 278, § 24, as construed and applied to petitioner's default of appearance in this case, impermissibly deprived petitioner of his right to trial by jury. *Cf. Chalk v. Beto*, 429 F.2d 225, 227–28 (5th Cir. 1970) (granting habeas corpus relief from state court conviction in part because petitioner did not "make an intelligent waiver of his right to trial by jury"). *See also Adams v. U. S. ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942) (permitting an accused in federal court to waive right to jury trial "in the exercise of a free and intelligent choice").

## III.

Two years after *Ludwig*, the Supreme Court dismissed appeals from the decisions of the Supreme Judicial Court of Massachusetts in *O'Clair* and *Francis, supra*, "for want of a substantial federal question." 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 97 (1978). The briefs filed in the Supreme Court[1] disclose that the appellants in those

1. In *Hicks v. Miranda*, 422 U.S. 332, 345 & n. 14, 95 S.Ct. 2281, 2290 & n. 14, 45 L.Ed.2d 223 (1974), the Supreme Court implicitly recognized that it is proper to examine the papers and briefs filed in cases that have been summarily dismissed in order to determine the "reach and content of summary actions." *See Cantor v. Detroit Edison Co.*, 428 U.S. 579, 617

& n. 5, 96 S.Ct. 3110, 3130 & n. 5, 49 L.Ed.2d 1141 (1976) (Stewart, J., dissenting) (citing *Hicks* for the proposition that an analysis of the positions taken by parties in briefs submitted to the Court is, "of course, called for in interpreting this Court's summary dispositions of appeals").

cases argued that in fact they had not received appearance notices and therefore their failure to appear could not properly be found to constitute waiver of the right to trial by jury. The Massachusetts courts determined that a defendant's failure to receive notice resulting from his failure to notify the clerk of a change of address does not excuse his failure to appear and that the default of each of the appellants was therefore a "solid default" constituting a deemed waiver of the right to jury trial. Appellants challenged this deemed waiver in their briefs filed in the Supreme Court. Thus, the issue presented by the present petition is not materially distinguishable from the issue necessarily decided by the Supreme Court in dismissing the appeals in *O'Clair* and *Francis* for want of a substantial federal question. This is, of course, a later and more specific ruling by the Court than those examined in part II, *supra.*

### IV.

In *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Supreme Court cautioned:

"unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise."

422 U.S. at 344, 95 S.Ct. at 2289 (quoting *Port Authority Bondholders Protective Committee v. Port of New York Authority,* 387 F.2d 259, 263 n. 3 (2d Cir. 1967) (Friendly, Circuit Judge)). Although attention has been focused on problems arising under the *Hicks* rule regarding the force as precedent of dismissals for want of a substantial federal question, *see, e.g., Colorado Springs Amusements, Ltd. v. Rizzo,* 428 U.S. 913–922, 96 S.Ct. 3228–3233, 49 L.Ed.2d 1222 (1976) (Brennan, J., dissenting from denial of *cert.*), the Court has taken no action since *Hicks* that can fairly be interpreted as limiting its application. It follows that, under *Hicks,* the present case is controlled

by the dismissal of the appeals in *O'Clair* and *Francis* unless "doctrinal developments" since the Court's action in *O'Clair* and *Francis* "indicate otherwise."

### V.

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), involving an asserted waiver of a right to have counsel present during an interrogation, the Supreme Court held:

First, the Arizona Supreme Court applied an erroneous standard for determining waiver where the accused has specifically invoked his right to counsel. It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938). See *Faretta v. California,* 422 U.S. 806, 835 [95 S.Ct. 2525, 2541, 45 L.Ed.2d 562] (1975); *North Carolina v. Butler,* 441 U.S. 369, 374–375 [99 S.Ct. 1755, 1758, 60 L.Ed.2d 286] (1979); *Brewer v. Williams,* 430 U.S. 387, 404 [97 S.Ct. 1232, 1242, 51 L.Ed.2d 424] (1977); *Fare v. Michael C.,* 442 U.S. 707, 724–725 [99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197] (1979).

\*     \*     \*     \*     \*     \*

In referring to the necessity to find Edwards' confession knowing and intelligent, the State Supreme Court cited *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 [93 S.Ct. 2041, 2047, 36 L.Ed.2d 854] (1973). Yet, it is clear that *Schneckloth* does not control the issue presented in this case. The issue in *Schneckloth* was under what conditions an individual could be found to have consented to a search and thereby waived his Fourth Amendment rights. The Court declined to im-

pose the "intentional relinquishment or abandonment of a known right or privilege" standard and required only that the consent be voluntary under the totality of the circumstances. The Court specifically noted that the right to counsel was a prime example of those rights requiring the special protection of the knowing and intelligent waiver standard, *id.*, at 241 [93 S.Ct. at 2055], but held that "[t]he considerations that informed the Court's holding in *Miranda* are simply inapplicable in the present case." 412 U.S., at 246 [93 S.Ct., at 2057]. *Schneckloth* itself thus emphasized that the voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries. Here, however sound the conclusion of the state courts as to the voluntariness of Edwards' admission may be, *neither the trial court nor the Arizona Supreme Court undertook to focus on whether Edwards understood his right to counsel and intelligently and knowingly relinquished it. It is thus apparent that the decision below misunderstood the requirement for finding a valid waiver of the right to counsel, once invoked.*

451 U.S. at 482–84, 101 S.Ct. at 1883–85 (emphasis added). *See also United States v. Kiendra*, 663 F.2d 349 at 352 (1st Cir. 1981) ("we emphasize the Supreme Court's recent reminder that 'the voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries' ").

*Edwards* unequivocally required a state-of-mind finding as to "whether Edwards understood his right to counsel and intelligently and knowingly relinquished it." 451 U.S. at 484, 101 S.Ct. at 1884. It is also clear, however, that the Court's opinion in *Edwards* treats this point not as a new doctrinal development but as a point "reasonably clear under our cases," *id.*, including many decided before the Court's dismissal of the appeals in *O'Clair* and *Francis.*

*Edwards* makes plain, first, that assertions of loss of constitutionally protected rights are in some circumstances governed by rigorous state-of-mind requirements but, second, that in other circumstances, as illustrated in *Schneckloth*, the Court has "declined to impose the 'intentional relinquishment or abandonment of a known right or privilege' standard . . .," *id.* I conclude that the Court has treated the issue of deemed waiver of jury trial in Massachusetts' two-tier system as one distinguishable from the issue of waiver of the right to counsel in circumstances like those before the Court in *Edwards.* Therefore, the specific holding necessarily implicit in the dismissal of appeals in *O'Clair* and *Francis* continues to control the issue presented by petitioner. Under that holding, Massachusetts did not act beyond constitutionally permissible limits in applying to petitioner the doctrine of "solid default," resulting in "deemed waiver," without fact findings that petitioner understood his right to jury trial and intelligently and knowingly relinquished it.

The petition for habeas corpus is denied.